**AFFIDAVIT IN CRIMINAL COMPLAINT**

I, Roobye F. Vega, being sworn, state:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.

2. I have been a Special Agent with the Drug Enforcement Administration ("DEA") since 2018. Since January 2018, I have been assigned to the Organized Crime Drug Enforcement Task Force Boston Strike Force, which is a strike force incorporating various law enforcement agencies, including DEA, the Bureau of Alcohol, Tabaco and Firearms and Explosives ("ATF"), the Federal Bureau of Investigations ("FBI"), Immigration and Customs Enforcement Homeland

3. Security Investigations ("HSI"), and the U.S. Marshals Service ("USMS"), among other agencies. I am also an officer in the Massachusetts Army National Guard and have been serving in that capacity since 2014. Prior to becoming a Special Agent, I graduated from Northeastern University with a degree in Global Studies and International Relations. I am bilingual in Spanish and English.

4. My responsibilities as a DEA Special Agent include the investigation of possible violations of federal law, including but not limited to violations of the Controlled Substances Act. As a Special Agent, I have participated in the investigations of criminal organizations involved in the distribution of controlled substances and related money laundering violations. I have participated in all aspects of drug investigations, including physical surveillance, surveillance of undercover transactions, the introduction of undercover agents, the execution of search warrants,

acting in an undercover capacity, making arrests, and debriefing defendants, informants and witnesses who had personal knowledge about major drug trafficking organizations. I have also reviewed recorded conversations and telephone, financial, and drug records. I have also received specialized training regarding the activities of narcotics traffickers, including the methods used to package, store, and distribute narcotics, and the methods used by narcotic traffickers to conceal and launder the proceeds of their narcotics-trafficking activities. Through my training and experience, I have become familiar with the manner in which illegal drugs are imported, transported, stored, and distributed, and the methods of payment for such drugs.

5.      Based on my training and experience, I am also aware that drug traffickers commonly use cellular telephones to communicate about and further their drug trafficking activities, but are aware of law enforcement's use of electronic surveillance, and thus frequently change cellular telephones numbers and cellular telephones, use multiple cellular telephones simultaneously, and use prepaid cellular telephones (where the subscriber of the phone is not required to provide personal identifying information) in an effort to thwart law enforcement's use of electronic surveillance. I am also aware that drug traffickers often speak in vague, guarded, or coded language when discussing their illegal business in an effort to prevent detection, and often use text messages in lieu of phone calls to avoid speaking over the telephone.

## Purpose of the Affidavit

6.      I submit this affidavit in support of a criminal complaint against William LIRIANO Rodriguez and Anthony PEREYRA-BATISTA, charging that on April 27, 2022, the defendants did conspire to distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. §846.

**Procedural History**

7.      On April 12, 2022, the Honorable Marianne B. Bowler, United States Magistrate Judge, District of Massachusetts, issued a warrant authorizing the government to obtain precise location information data for cellular phone assigned call number (929) 442-9439 (hereinafter, the "Target Telephone") with no subscriber information. [Dkt. No. 22-MJ-2218-MBB].

**Probable Cause**

8.      In March 2022, investigators obtained the phone number for the Target Telephone from a source of information (SOI-1)[1] that SOI-1 believed was being used by an individual located in New York to facilitate the distribution of drugs. On April 1, 2022, at the direction of investigators, a confidential source ("CS")[2] called the Target Telephone and spoke to a male later identified as LIRIANO about obtaining a sample of fentanyl. All calls detailed herein between the CS and LIRIANO were consensually recorded and preserved, and LIRIANO used the Target Telephone each time to communicate with the CS.

9.      On April 3, 2022, LIRIANO called the CS to ask when the CS would be traveling to New York to pick up the drug sample. The CS asked if LIRIANO could deliver the sample to Massachusetts, and LIRIANO agreed.

---

[1] SOI-1 has been providing information to DEA about drug trafficking targets since 2021. In 2016, SOI-1 was arrested and charged with a federal drug offense and was later convicted. SOI-1 has provided information in other investigations that has led to the arrest of a fugitive. SOI-1 began cooperating with DEA on behalf of a third party who was facing federal drug charges. I believe the information provided by SOI-1 is reliable.

[2] CS is a paid DEA documented informant who has been cooperating since 2017. CS has a prior federal drug trafficking conviction. CS initially provided information related to other drug trafficking investigations in hope of leniency at CS's sentencing. Information provided by CS in numerous other drug investigations has led to arrests and seizures of drugs and drug proceeds. I believe information provided by CS is reliable.

10. On April 4, 2022, LIRIANO called the CS asking for an address to deliver the sample ("Send me an address and I will come."). The CS sent LIRIANO a text message with the address for a Market Basket shopping center in Waltham, Massachusetts ("110 market place dr. Waltham, MA 02451 United States"). LIRIANO confirmed he would deliver the sample that day.

11. Later that night, LIRIANO called the CS to say he had arrived at the location previously provided by the CS ("I'm here."). In a subsequent call, the CS told LIRIANO he/she was not available to meet and that the CS's courier was also not available ("I'm busy working and my cousin is not available."). LIRIANO asked if the CS had another associate who could pick up the sample, and if not, LIRIANO said he could leave it in a hidden location ("You don't have anybody that I can give it to? I can also leave it here in a spot where you can come and find it."). The CS told LIRIANO to leave the sample and then let CS know where it was ("Well, leave it around there and let me know where it is."). LIRIANO agreed ("I have an idea where.").

12. Approximately 10 minutes later, the CS called LIRIANO, and LIRIANO said he had made a video to direct the CS to the location where the sample was left ("I made you a video, and you will find it right away."). The CS asked for the video ("Send it to me."), and LIRIANO agreed and gave a description of the location ("I'm going to send it. You will see in the video it's under a lamppost, covered with some grass, between Starbucks and Jake and Joes."). At 9:47 p.m., LIRIANO sent the CS the video of a location near the address that the CS had initially provided to LIRIANO.

13. At approximately 10:00 p.m., agents went to the location depicted in the video and recovered two small bags, each of which contained a substance that field tested positive for fentanyl. One bag weighed approximately four grams and the other weighed approximately two grams.

4

14. After agents recovered the suspected fentanyl, the CS called LIRIANO to let him know that he had the samples in hand. The CS said he preferred the larger sample and wanted to purchase two to three kilograms. LIRIANO agreed to sell the CS three kilograms of fentanyl for $38,000 apiece. LIRIANO also offered to provide the CS with a sample of pills. LIRIANO said if the CS wanted to purchase additional pills, LIRIANO would sell them to CS for $6 apiece. The CS agreed and said he would call LIRIANO back to arrange a time and date for the purchase.

15. During the week of April 20, 2022, the CS and LIRIANO spoke on the phone to arrange the date for the delivery of the three kilograms of fentanyl. LIRIANO assured the CS that his drugs were high quality ("This is good, this one is good. I'm telling you . . . I like my people to be satisfied . . . You are going to have the best."). The CS told LIRIANO he was collecting the money to pay for the drugs ("I'm picking up more money to see how much I can get.") and would call later to finalize a time to meet.

16. On April 26, 2022, the CS contacted LIRIANO and arranged to meet the following day at the same location in Waltham where LIRIANO had delivered the fentanyl samples. LIRIANO told the CS that he was bringing at least four kilograms of fentanyl and would try to bring one additional kilogram.

17. On April 27, 2022, LIRIANO called the CS to confirm the meeting and advised that he would be coming to meet the CS with a "team." In a subsequent call later that day, LIRIANO explained to the CS that LIRIANO's team would be arriving before him to check out the area. LIRIANO also explained that he had to stop at a funeral home in New Jersey to secure a "coffin." Agents understood LIRIANO to mean that he was sending associates (his "team") to conduct countersurveillance of the location where he would be delivering the fentanyl and that he

5

was stopping to pick up a vehicle with a hidden compartment (the "coffin") which would be used to deliver the fentanyl.

18. At approximately 7:06 p.m., a black Toyota Camry with New York license plates arrived at the Market Basket parking lot in Waltham. Minutes later, investigators conducting surveillance observed a white Dodge pick-up truck pulling a Jet-ski and a white Honda CRV in the Market Basket parking lot. At approximately 7:15 p.m., LIRIANO called the CS and advised he was five minutes away.

19. At 7:33 p.m., the CS spoke with LIRIANO on the phone and told LIRIANO to park in the same area where LIRIANO had previously left the fentanyl sample. LIRIANO agreed and said he was in a "white CRV." The CS walked towards and entered the CRV. The CS requested to see the drugs. LIRIANO hesitated, saying there were suspicious vehicles in the parking lot and told the CS that the drugs were close by. The CS again asked to see the drugs. LIRIANO placed a call to PEREYRA-BATISTA and directed him to come to where LIRIANO was parked. The white Dodge pick-up truck pulling the Jet-ski then departed the Market Basket parking lot and moved closer to and parked near LIRIANO's white CRV. LIRIANO and the CS got out of the CRV and walked together towards the Dodge pick-up truck and were greeted by the driver, PEREYRA-BATISTA. PEREYRA-BATISTA handed the CS a brown bag containing blue pills, which later field tested positive for fentanyl. PEREYRA-BATISTA then removed the cover from the Jet-ski, opened compartments on the Jet-ski, and told the CS, "Here it is." The CS reached in and removed a black bag that contained five rectangular shaped objects wrapped in green tape. The CS and LIRIANO began walking back toward the Market Basket. Investigators then placed LIRIANO and PEREYRA-BATISTA under arrest. LIRIANO had the phone that he used to communicate with

the CS in his pocket at the time of his arrest. The green wrapped objects field tested positive for fentanyl.

## CONCLUSION

20. Based on the information set forth above, probable cause exists to believe that LIRIANO and PEREYRA-BATISTA have engaged in a violation of 21 U.S.C. §846, namely conspiracy to distribute and possess with intent to distribute controlled substances.

I, Roobye F. Vega, hereby state under penalty of perjury that the contents of this affidavit are true and correct to the best of my knowledge, information, and belief.

Respectfully submitted,

_____
Roobye F. Vega, Special Agent
Drug Enforcement Administration

Sworn before me by telephone in accordance with the requirements of Federal Rule of Criminal Procedure 4.1 this 28th day of April 2022.

_____
Honorable Marianne B. Bowler
United States Magistrate Judge
District of Massachusetts